UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RODNEY S. PERRY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03238-TWP-MPB |
| | ) | |
| DENNIS REAGLE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY SCREENING COMPLAINT AND
DIRECTING ISSUANCE OF PROCESS**

This matter is before the Court on Plaintiff Rodney Perry's ("Mr. Perry") action under 42 U.S.C. § 1983 regarding his confinement in disciplinary segregation at Pendleton Correctional Facility (PCF). Because Mr. Perry is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his amended complaint.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the amended complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the amended complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Perry's pro se pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See, e.g.*, *Abu-Shawish v. United States*, 898 F.3d 726, 737 (7th Cir. 2018) ("And because Abu-Shawish was proceeding *pro se*, the district court should have construed his petition liberally.").

## II. The Amended Complaint

Mr. Perry asserts claims for damages and injunctive relief against four defendants: PCF Warden Dennis Reagle; Classification Supervisor Paula Dickson; Unit Team Manager (UTM) Sara Amburn; and UTM Timothy Greathouse. The Court has not reviewed the 36-page exhibit Mr. Perry unnecessarily attached to his amended complaint. *See, e.g., Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (noting that a district judge "could have stricken" attachments to a complaint "without bothering to read" them). The following summary of facts is drawn from the amended complaint alone.

Mr. Perry is no stranger to this Court or to the inmate grievance process at PCF. In October 2019, he was seeking transfer to a different prison through grievances and litigation.

On October 25, Mr. Perry was involved "a fist altercation" with a staff member. Dkt. 12 at 3. The warden assigned him to disciplinary segregation while he awaited a disciplinary hearing. On January 9, 2020, the hearing officer found Mr. Perry guilty and sentenced him to disciplinary segregation through October 25, 2020—one year from the date of the altercation and Mr. Perry's assignment to disciplinary segregation.

Mr. Perry believed he would be "in a substantial risk of harm" if he was released from disciplinary segregation to general population. Dkt. 12 at 14. He alleges that the defendants knew of the danger he faced. However, the amended complaint does not provide any information about why Mr. Perry would be in danger in general population or what type of danger he would face.

In early June 2020, Ms. Dickson "attempted to lure" Mr. Perry into accepting an early release from disciplinary segregation to general population. Mr. Perry refused.

On June 13, Mr. Perry submitted paperwork requesting to be moved into protective custody after his disciplinary segregation term ended on October 25. He submitted this paperwork to UTM Amburn, who notified Warden Reagle of the request.

Mr. Perry remained in disciplinary segregation after his sentence ended on October 25 2020. On October 27, UTM Amburn sent a counselor to ask Mr. Perry to withdraw his protective custody request and accept placement in general population. When Mr. Perry refused, UTM Amburn told Mr. Perry he would either be released to general population or remain in disciplinary segregation. He would not be released to protective custody.

UTM Amburn later told Mr. Perry that he could not move to protective custody because no spaces were available and because such a transfer prohibited by COVID-19 protocols. Over the coming months, however, Mr. Perry witnessed other inmates moving to different cells within disciplinary segregation and from disciplinary segregation to other restrictive housing units.

On November 12 and 19, 2020, counselors asked Mr. Perry to sign a form consenting to remain in disciplinary segregation permanently. He refused. On November 20, 2020, Mr. Perry asked to move from one side of the disciplinary segregation unit to the other. Again, he witnessed intra-unit movements by other inmates, but his request was denied.

On January 4, 2021, UTM Greathouse reassigned Mr. Perry to a different area within the disciplinary segregation unit. This was not the move Mr. Perry requested. Although he provides no details, Mr. Perry indicates that conditions in his new housing unit were harsher and more restrictive than in his original disciplinary segregation unit and in general population. The amended

complaint refers to hygiene and sanitation, but it does not state what specific needs related to hygiene and sanitation went unmet during Mr. Perry's time in disciplinary segregation.

Eventually, Mr. Perry withdrew his request for protective custody and agreed to return to general population. There, he faced "a substantial risk of harm" and had to take "measures to protect himself from further assaults" by inmates. Dkt. 12 at 21. The amended complaint does not indicate that Mr. Perry has been attacked since his release to general population.

### III. Discussion of Claims

Mr. Perry asserts two claims, each pursuant to § 1983. First, he alleges that the defendants violated his Eighth Amendment rights by confining him in disciplinary segregation beyond the end of his sentence, denying him protective custody, and then releasing him into general population. Second, he alleges that the defendants violated his First Amendment rights by taking those actions in retaliation for his constant pursuit of lawsuits and grievances against PCF staff.

### A.     First Amendment Claims

Mr. Perry's First Amendment claims **will proceed** as submitted against all four defendants, in their individual capacities only. Claims against the defendants in their official capacities are **dismissed**. The amended complaint identifies all four defendants as Indiana Department of Correction (IDOC) employees. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). The Eleventh Amendment bars private lawsuits in federal court against a state that has not consented. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). "An agency of the state enjoys this same immunity." *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). Because a suit against a state employee in his official capacity

is equivalent to a suit against the state itself, "state officials in their official capacities are also immune from suit under the Eleventh Amendment." *Joseph*, 432 F.3d at 748.

**B.      Eighth Amendment Claims**

The amended complaint implicates several aspects of the Eighth Amendment's protection against cruel and unusual punishment. However, the allegations do not include enough information about the conditions of Mr. Perry's confinement to support a plausible Eighth Amendment claim under any theory.

"In cases involving the conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017). The first is "an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Id.* The amended complaint does not satisfy this element. Mr. Perry provides no information about the conditions of his confinement in disciplinary segregation or, later, in general population. He refers broadly to deficiencies in sanitation and hygiene, but he has not provided any details to support a reasonable inference that he was deprived of "the minimal civilized measure of life's necessities" or exposed to an "excessive risk to . . . health and safety." *Id.*

"[P]rolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment . . . depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." *Id.* citing (*Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012)). Mr. Perry was confined to disciplinary segregation for over a year—a prolonged period—but he has provided no information about the "nature of the segregation." *Id.*

Finally, to the extent Mr. Perry alleges that the defendants failed to protect him from the threat of violence by other inmates, his allegations do not support a plausible claim. "A prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety[.]'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[A] deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in prison." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Mr. Perry states broadly that he would have been in danger in general population. Without more information about the nature or source of that danger, the Court cannot reasonably infer that any defendant disregarded an *excessive* risk to his health or safety.

Mr. Perry's Eighth Amendment claims are **dismissed** for **failure to state a claim** upon which relief may be granted.

### IV. Conclusion and Issuance of Process

The **clerk is directed** pursuant to Federal Rule of Civil Procedure 4(c)(3) to issue process to Defendants (1) Dennis Reagle, (2) Paula Dickson, (3) Sara Amburn, and (4) Timothy Greathouse in the manner specified by Federal Rule of Civil Procedure 4(d). Process shall consist of the amended complaint (Dkt. 12), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

The claims discussed in Part III are the only claims the Court identified in the amended complaint. If Mr. Perry believes he asserted additional claims not discussed in this Entry, he shall have **through June 25, 2021**, to notify the Court.

**IT IS SO ORDERED.**

Date:   5/24/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RODNEY S. PERRY, SR.
974441
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Electronic service to Indiana Department of Correction employees at Pendleton Correctional Facility:

    Dennis Reagle, Warden
    Paula Dickson, Classification Supervisor
    Sara Amburn, Unit Team Manager
    Timothy Greathouse, Unit Team Manager